**MULLER, Appellant,**

v.

**CES CREDIT UNION, Appellee.**

[Cite as *Muller v. CES Credit Union,* 161 Ohio App.3d 771, 2005-Ohio-3251.]

Court of Appeals of Ohio,
Fifth District, Knox County.

No. 04CA000025.

Decided June 24, 2005.

Erica E. Retter, for appellant.

Ronald B. Noga, for appellee.

EDWARDS, Judge.

{¶ 1} Defendant-appellant, Joseph Todd Muller, appeals from the August 30, 2004 judgment entry of the Mount Vernon Municipal Court, granting judgment in favor of plaintiff-appellee, CES Credit Union, and against defendant-appellant in the amount of $13,807.84 plus interest.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} Appellant Joseph Todd Muller and Tina Muller are brother and sister. On or about December 8, 1989, appellant and Tina Muller signed a loan

application with appellee, CES Credit Union. Tina Muller was seeking a loan from CES so that she could purchase appellant's 1987 Buick Skylark. The loan application indicated that appellant's birth date was February 10, 1971, and indicated that appellant had an automobile loan with BancOhio [1] in the amount of $7,200 that would be paid off if the loan to Tina Muller was approved. Once the loan application was approved, both appellant and Tina Muller signed the loan contract. While Tina signed the contract on December 26, 1989, as the debtor, appellant, on December 22, 1989, signed as a cosignor. The amount of the loan was $6,160. Appellant then transferred the Buick Skylark to his sister, and his auto loan with BancOhio was paid off.

{¶ 3} After Tina Muller defaulted on her loan, the 1987 Buick Skylark was repossessed and sold at auction on August 13, 1991, for $1,780, leaving a principal balance of $4,915.73 due on the loan.

{¶ 4} Subsequently, on January 21, 2003, appellee filed a complaint against appellant and Tina Muller [2] in the Mount Vernon Municipal Court, seeking a judgment against the two "in the principal sum of $4915.73 together with accrued interest of $7833.95 through January 14, 2002 plus interest thereafter on the principal balance at the rate of 13.500% per annum and costs." Appellant was served with a copy of the summons and complaint on April 10, 2003. Appellant, in an answer filed on August 25, 2003, alleged that, on December 22, 1989, the date that he signed the loan contract, he was 17 years of age and that, as a minor, he lacked legal capacity to sign the contract. Appellant also filed a counterclaim in which he alleged that he had savings and checking accounts with CES Credit Union while he was still a minor; that appellee "had a duty to know Defendant's age and to avoid his co-signing on the 'account' herein," and that appellee breached such duty, causing appellant to suffer severe emotional distress.

{¶ 5} A bench trial was held on August 18, 2004. The following testimony was adduced at trial.

{¶ 6} Brandi Booth, the collection manager with CES Credit Union, testified that on December 14, 1989, six days after the loan application was submitted to appellee,[3] two members of the credit union's loan board rejected the application

---

1. The loan had been obtained in order to purchase the Buick Skylark.

2. Tina Muller was never served with a copy of the summons and complaint. The trial court, pursuant to a journal entry filed on July 29, 2004, dismissed the case against Tina Muller without prejudice for want of prosecution.

3. As stated above, both appellant and Tina Muller signed the loan application on December 8, 1989.

submitted by appellant and Tina Muller due to insufficient collateral and that, after reviewing the loan application, three members rejected the application again on December 21, 1989, due to "debt ratio." The next day, on December 22, 1989, appellant signed the loan contract. Booth testified that CES Credit Union's CEO would have talked to people about a small consumer loan such as in the case sub judice but that there would not be any record of such a conversation.

{¶ 7} At trial, appellant testified that his date of birth is February 10, 1972. A certified copy of appellant's birth certificate showing that date was admitted into evidence at trial. Appellant testified that on December 8, 1989, he signed and dated the loan application that indicated that his date of birth was February 10, 1971, but that he did not fill out any other portion of the application. When asked, appellant testified that he did not intend to lie about his age or commit a fraud on CES Credit Union and that he had never caught the mistake on the loan application. Appellant further testified that before May of 2003, he had never received any kind of communication from CES Credit Union regarding the loan default. After he left Mount Vernon for central Ohio in February of 1990, upon turning 18, appellant had minimal contact with his family and was estranged from his sister, who never advised appellant that the loan was in default and that the car had been repossessed. According to appellant, he did not learn about the defaulted loan until March or May 2003, when he received a court document in the mail. When appellant received the document, he sent a letter to appellee's counsel dated May 5, 2003, indicating that he was underage at the time of the loan contract and "as a minor [he] was not of legal age to sign anything." A copy of that letter was filed with the Mount Vernon Municipal Court.

{¶ 8} Appellant further testified that his relationship with CES Credit Union began before the loan contract that is the subject of this case. In addition to a checking account that was opened when appellant was 16, appellant had a car loan with appellee "when [he] was sixteen to where an adult cosigned for that car loan." Appellant testified that he never disaffirmed the loan that he cosigned for his sister because he "never knew of such law * * * until this was brought to [his] attention in March or May of 2003."

{¶ 9} At the conclusion of the testimony, appellant withdrew his counterclaim for intentional infliction of emotional distress.

{¶ 10} Pursuant to a judgment entry filed August 30, 2004, the trial court granted judgment in favor of appellee and against appellant in the amount of $13,807.84 plus interest. The trial court, in its entry, found that there was a deficiency in the amount of $4,915.73 and that interest totaling $8,892.11 had accrued on the deficiency.

{¶ 11} It is from the trial court's August 30, 2004 judgment entry that appellant now appeals, raising the following assignments of error:

{¶ 12} "I. The trial court erred to the prejudice of appellant in its judgments on the questions of contract, and abused its discretion by excluding appellant's evidence, including without limitation cross-examination of appellee's witness, of appellee's failed acceptance as irrelevant to appellant's defense that no contract was formed.

{¶ 13} "II. The trial court erred to the prejudice of appellant in its judgments on the question of rescission, and abused its discretion to the prejudice of appellant by finding for appellee against the manifest weight of the evidence."

I

{¶ 14} Appellant in his first assignment of error argues that the trial court erred in excluding evidence of the prior rejections of the loan application by appellee's loan board. As is stated above, testimony was adduced at trial that appellee's loan board, on December 14, 1989, and again on December 21, 1989, had rejected the loan application but that appellant had signed the loan contract on December 22, 1989, and his sister had signed it on December 26, 1989. Appellant now contends that he should have been permitted to cross-examine Brandi Booth and present evidence about the prior rejections of the loan application, because those rejections resulted in an invalid contract.

{¶ 15} At the trial in this matter, appellant attempted to introduce evidence regarding the loan board's previous rejections, arguing, "Our case has always been that the loan was—the loan funds were disbursed but that the contract was void from—because there was no acceptance of the offer which was the loan application." In short, appellant argued that the loan application was never approved due to the two prior rejections, one just a day before appellant signed the loan contract, and that the loan funds were, therefore, transferred on the basis of a mistake of law and were not recoverable. The trial court, however, refused to allow appellant to question Booth during cross-examination about the loan board's previous disapproval of the loan application, holding, "It's totally irrelevant about if the—the issue is whether a loan was made or not." The trial court further stated on the record as follows:

{¶ 16} "Your, your objections are noted. But you're not gonna ask anymore questions about the, the committee disapproving it. Now we're gonna, we're gonna take a recess here in a little bit and when we do, you can talk to the court reporter and tell her what all your evidence has, and you can just talk and make all the record you want for ten or fifteen minutes while we're on break and then

we'll resume testimony. But no more questions about the board approval or disapproval. Let's move on."

{¶ 17} It is axiomatic that the admission or exclusion of evidence is generally within the sound discretion of trial court, and a reviewing court may reverse only upon a showing of an abuse of that discretion. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 18} We find that the trial court did not abuse its discretion in excluding evidence of the loan board's prior rejections of appellant's loan application, because that decision was not unreasonable, arbitrary, or unconscionable. Appellant sought to introduce evidence to show that a contract was never formed since there was no acceptance of the loan application by appellee and that, therefore, the loan proceeds were distributed under a "mistake of law." However, testimony was adduced that, in fact, the loan contract was signed by appellant and his sister *after* the December 21, 1989 rejection of the loan, that the loan was, in fact, made, and that the proceeds were distributed under the loan contract. Testimony at trial also was adduced that, while the loan board recommended whether or not a loan should be approved, a loan manager or chief executive officer could override that decision. Thus, while the loan board may have recommended against approving the loan to appellant and his sister, that recommendation was apparently overridden. Finally, testimony was adduced that appellant had used the loan proceeds to pay off his car loan with BancOhio.

{¶ 19} Based on the foregoing, we concur with the trial court that testimony regarding the prior loan disapprovals was not relevant since it is clear, based on undisputed testimony adduced at trial, that the loan was later made.

{¶ 20} Appellant's first assignment of error is, therefore, overruled.

## II

{¶ 21} Appellant, in his second assignment of error, argues that the trial court erred in holding that appellant could not disaffirm the loan contract, which appellant signed when he was only 17 years of age, and that the trial court's holding is against the manifest weight of the evidence. We disagree.

{¶ 22} R.C. 3109.01 provides that only persons over the age of 18 and under no legal disability are capable of contracting. Contracts of a minor are voidable at the minor's election upon reaching majority or a reasonable time thereafter. *Mestetzko v. Elf Motor Co.* (1929), 119 Ohio St. 575, 581, 165 N.E. 93; *Cassella v. Tiberio* (1948), 150 Ohio St. 27, 37 O.O. 320, 80 N.E.2d 426. The only

exceptions (those authorized by law; those entered in the performance of a legal duty; those for the purchase of necessities)[4] are inapplicable. *Parkwood OB/GYN, Inc. v. Hess* (1995), 70 Ohio Misc.2d 32, 650 N.E.2d 533.

{¶ 23} While there is no definite rule as to how soon after a minor reaches majority he must exercise his privilege to disaffirm, " '[i]t may be said in general that this must be done within a reasonable time thereafter considering the circumstances of the particular case.' " *McKenzie v. Tellis* (1942), 37 Ohio Law Abs. 351, 354, 47 N.E.2d 253.

{¶ 24} In the case sub judice, the parties do not dispute that appellant was only 17 years of age when he cosigned for the loan. While the loan application, which was signed by appellant on December 8, 1989, indicated that appellant's date of birth was February 10, 1971, appellant was actually born on February 10, 1972. Thus, appellant was approximately two months shy of his 18th birthday at the time he signed the loan application.

{¶ 25} However, appellant did not attempt to disaffirm the loan until March or May 2003 when he was sued in the case sub judice. Appellant remained "mute as to his disaffirmance" from his 18th birthday on February 10, 1989, until the time he was sued. See *McKenzie*, supra. Appellant cannot now assert that the loan contract was void because of his minority.

{¶ 26} Appellant's second assignment of error is, therefore, overruled.

{¶ 27} Accordingly, the judgment of the Mount Vernon Municipal Court is affirmed.

Judgment affirmed.

GWIN, P.J., and BOGGINS, J., concur.

---

4. Necessities are "food, medicine, clothes, shelter or personal services usually considered reasonably essential for the preservation and enjoyment of life." *Parkwood OB/GYN, Inc. v. Hess* (1995), 70 Ohio Misc.2d 32, 33, 650 N.E.2d 533.