[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Thomasson v. Thomasson,* Slip Opinion No. 2018-Ohio-2417.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2417

THOMASSON, APPELLANT, *v.* THOMASSON, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Thomasson v. Thomasson,* Slip Opinion No. 2018-Ohio-2417.]**

*Divorce—A trial court's order appointing a guardian ad litem to represent an adult in a divorce case is a final, appealable order under R.C. 2505.02(B)(2) when adult has not been adjudicated incompetent subsequent to providing parties with notice and opportunity to be heard on issue of adult's competency—Court of appeals' judgment reversed, trial court's order appointing guardian ad litem vacated, and cause remanded to trial court.*

(No. 2016-1629—Submitted November 21, 2017—Decided June 27, 2018.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 104579.

_____

**FISCHER, J.**

{¶ 1} Appellant, Carol J. Thomasson ("Carol"), has asked us to reverse a judgment of the Eighth District Court of Appeals and hold that the trial court's order appointing a guardian ad litem ("GAL") to act on her behalf in her divorce case is

a final, appealable order under R.C. 2505.02(B)(2). Carol has also asked us to conclude that the order violates her due-process rights and that it should be vacated as a result.

{¶ 2} In the case at bar, the Cuyahoga County Court of Common Pleas, Domestic Relations Division, issued an order appointing a GAL to represent Carol without providing her with prior notice or an opportunity to be heard on the issue. The order was issued during a special proceeding and affects a substantial right, and Carol will not be provided adequate relief if she is not permitted to immediately appeal the order. Therefore, the order is a final, appealable order under R.C. 2505.02(B)(2), and we reverse the judgment of the court of appeals. Further, the lack of proper process violated Carol's due-process rights, and we therefore vacate the trial court's order and remand the case to the trial court for further proceedings.

## I. BACKGROUND

{¶ 3} Carol and appellee, Charles W. Thomasson ("Charles"), were married in 1985. On January 15, 2015, Charles filed for divorce in the Cuyahoga County domestic-relations court. On June 7, 2016, the court issued an order sua sponte appointing a GAL on behalf of Carol pursuant to Civ.R. 75(B)(2) and requiring Charles and Carol to deposit $1,000 each with the clerk of courts as security for the payment of the GAL's fee.

{¶ 4} Carol appealed and argued that Civ.R. 75(B)(2) does not provide authority to a trial court to appoint a GAL for an adult and that the appointment of a GAL to act on behalf of an adult is proper only after a hearing and a finding that the adult is incompetent. Charles filed a single-page brief in which he "join[ed] in" Carol's brief.

{¶ 5} The court of appeals sua sponte dismissed the appeal, concluding that an order appointing a GAL for an adult is not a final, appealable order under R.C. 2505.02(B).

2

**{¶ 6}** Carol filed a jurisdictional appeal in this court presenting three propositions of law.[1]  We accepted jurisdiction over the appeal.  149 Ohio St.3d 1417, 2017-Ohio-4038, 75 N.E.3d 236.

## II.  ANALYSIS

**{¶ 7}** In her third proposition of law, Carol presents arguments related to the threshold question whether the trial court's order appointing a GAL to represent her is a final, appealable order.  In her first and second propositions of law, Carol presents arguments challenging the order on its merits.  Accordingly, we address the third proposition of law first.

### A.  Civ.R. 75(B)(2) and 17(B)

**{¶ 8}** The trial court's order cites Civ.R. 75(B)(2) as authority for appointing a GAL to represent Carol.  Courts of appeals have found that an order issued pursuant to Civ.R. 75(B)(2) is not a final, appealable order.  *See, e.g.*, *Davis v. Lewis*, 10th Dist. Franklin Nos. 98AP-661 and 98AP-1284, 1999 WL 77221, *2 (Feb. 18, 1999).  But Civ.R. 75(B)(2) does not apply to adults; instead, the rule permits the trial judge presiding over a divorce proceeding to join a "child" of the divorcing parties as a party defendant and permits the trial court to appoint a GAL "for the child."  Therefore, Civ.R. 75(B)(2) does not apply to this case, and caselaw on the appealability of orders properly relying on that rule is not relevant to this appeal.

**{¶ 9}** Neither the lower courts nor the parties have cited any rule that permits a trial court to appoint a GAL for a competent adult.  However, under Civ.R. 17(B), "[w]hen a minor or incompetent person is not otherwise represented in an action the court shall appoint a guardian ad litem or shall make such other

---

[1] Notably, in her brief, Carol renumbered the three propositions of law accepted by this court and added a fourth proposition.  The additional proposition of law is stricken, and no arguments raised in support of it will be considered.  (For ease of analysis, our numbering of the propositions of law reflects Carol's jurisdictional memorandum, not her brief.)

order as it deems proper for the protection of such minor or incompetent person." Carol is not a minor child; thus, the only reasonable interpretation of the trial court's order is that the court found it necessary to appoint a GAL for Carol because the court determined that she is an incompetent person who does not otherwise have an appropriate representative.

## B. Final, Appealable Order

{¶ 10} Ohio's courts of appeals have jurisdiction "to review and affirm, modify, or reverse judgments or final orders." Article IV, Section 3(B)(2), Ohio Constitution. R.C. 2505.02(B) sets forth several types of final, appealable orders. The present appeal involves the category defined in R.C. 2505.02(B)(2), which provides that an "order that affects a substantial right made in a special proceeding" is a final, appealable order. This court has held that an order affects a substantial right for purposes of R.C. 2505.02(B)(2) only if "in the absence of immediate review of the order [the appellant] will be denied effective relief in the future." *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993).

{¶ 11} Thus, to demonstrate that the trial court's order appointing a GAL for her is a final, appealable order, Carol must show (1) that the order was made in a special proceeding, (2) that the order affects a substantial right, and (3) that she would not be able to effectively protect her substantial right without immediate review.

### 1. Special Proceeding

{¶ 12} R.C. 2505.02(A)(2) defines "special proceeding" as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." As we have previously stated, divorce, a statutory matter that did not exist at common law, qualifies as a special proceeding. *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 6. Carol was provided a GAL for her divorce proceeding; the order appointing the GAL was, therefore, made during a special proceeding.

4

### 2. *Substantial Right*

{¶ 13} In 1998, the legislature amended R.C. 2505.02 and provided a definition of "substantial right." Sub.H.B. No. 394, 147 Ohio Laws, Part II, 3277. R.C. 2505.02(A)(1) defines "substantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." Carol argues that the trial court's order violates her "right to procedural due process" and that "due process is a substantial right that the United States Constitution entitles a person to enforce and/or protect."

{¶ 14} In support of this argument, Carol asserts that before appointing the GAL, the trial court did not provide the parties with notice or the chance to be heard regarding the appointment. These assertions are supported by the record. The record does not reflect that the parties were notified that the court was considering appointing a GAL for Carol, and the record includes no evidence from which we could conclude that Carol was provided any opportunity to be heard prior to the appointment of the GAL.

{¶ 15} Ohio courts have not previously addressed whether an order appointing a GAL to represent an adult without an adjudication that the adult is incompetent—that is, without a hearing on the matter and prior to any notice to the adult—violates the adult's right to due process. Several other state courts have addressed similar situations. Those courts have concluded that such an appointment is improper, many specifically holding that the improper appointment violates due-process protections.

{¶ 16} In *In re Joann E.*, 104 Cal.App.4th 347, 128 Cal.Rptr.2d 189 (2002), the California Court of Appeal reviewed a lower court's order appointing a GAL to act on behalf of a grandmother who was attempting to retain custody of her minor grandchild. The reviewing court found that the lower court's order violated the

grandmother's right to due process because the court had failed to provide prior notice and hold a competency hearing. *Id*. at 349.

{¶ 17} In *State v. Ladd*, 139 Vt. 642, 644, 433 A.2d 294 (1981), the Supreme Court of Vermont held that a lower court's decision not to remove a GAL for an adult defendant who was determined to be competent "seriously impinge[d] upon the defendant's rights to due process guaranteed by the United States Constitution."

{¶ 18} In *J.H. v. Ada S. McKinley Community Servs., Inc.*, 369 Ill.App.3d 803, 861 N.E.2d 320 (2006), an Illinois Court of Appeals cited the federal Due Process Clause when determining that two former foster children should not have been appointed a GAL after they had become adults because they had not been adjudicated incompetent. *Id*. at 816, citing *Ladd* at 644.

{¶ 19} And in *Graham v. Graham*, 40 Wash.2d 64, 240 P.2d 564 (1952), the Supreme Court of Washington issued a writ of prohibition to prevent a lower court from appointing a GAL for an adult without providing the adult a hearing and the opportunity to be heard. The supreme court did not cite the Due Process Clause, but the court's reasoning clearly expresses due-process concerns:

> The interposition of a guardian ad litem could very well substitute his judgment, inclinations and intelligence for an alleged incompetent's; furthermore, the retention of legal counsel or the employment of a different attorney could be determined solely by the guardian ad litem, subject, of course, to some direction and control by the court, and the latter might be open to some question. In any event the changes which might result from the appointment of a guardian ad litem are of such significance as to be permitted only after a full, fair hearing and an opportunity to be heard is accorded to an alleged incompetent.

*Id.* at 68.

**{¶ 20}** We agree with the determinations and reasoning of these several courts. When a GAL is appointed by a court to represent an adult, that adult loses some autonomy in directing the litigation. It violates an adult's right to due process to treat the adult as an incompetent and to deprive that adult of his or her autonomy without an adjudication that the adult is incompetent and without prior notice and an opportunity to be heard on the issue of his or her competency.

**{¶ 21}** The trial court's order treated Carol as though she had been adjudicated incompetent and appointed a GAL to represent her interests, but the order was not preceded by an adjudication of incompetency, prior notice, and any opportunity to be heard on the issue. This lack of process violates Carol's right to due process and, therefore, implicates a "substantial right" as defined in R.C. 2505.02(A)(1).

### 3. Effective Protection Requires Immediate Review

**{¶ 22}** In *Bell*, 67 Ohio St.3d 60, 616 N.E.2d 181, which preceded the 1998 amendments to R.C. 2505.02 that provided a statutory definition of "substantial right," this court decided that an "order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." *Id*. at 63, citing *Union Camp Corp., Harchem Div. v. Whitman*, 54 Ohio St.2d 159, 162, 375 N.E.2d 417 (1978); *State v. Collins*, 24 Ohio St.2d 107, 110, 265 N.E.2d 261 (1970); *Morris v. Invest. Life Ins. Co. of Am.*, 6 Ohio St.2d 185, 189, 217 N.E.2d 202 (1966); and *In re Estate of Wyckoff*, 166 Ohio St. 354, 359, 142 N.E.2d 660 (1957). In *Bell*, the court held that an order directing a party to submit materials requested in discovery for in camera inspection was not a final, appealable order. *Bell* at 65. The court noted, however, that if the trial court ordered, after in camera inspection, that some documents that were

alleged to have been privileged should be disclosed, that order would be appealable. *Id.* at 64.

{¶ 23} Subsequent to the 1998 amendments to R.C. 2505.02, this court has continued to cite *Bell* for the proposition that an order affects a substantial right only if an immediate appeal is necessary to protect the interests of the appealing party. *See, e.g.*, *Wilhelm-Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, at ¶ 7.

{¶ 24} In *Wilhelm-Kissinger*, this court determined that an order denying a motion to disqualify opposing counsel in a divorce proceeding was not a final, appealable order under R.C. 2505.02(B)(2). *Id.* at ¶ 12. The court distinguished an order denying a motion to disqualify counsel from an order granting such a motion. The court noted that "an order granting disqualification immediately and definitely affects the party it deprives of chosen counsel; the purpose of appealing such an order is to prevent the removal itself." *Id*. at ¶ 9. The court also noted that the granting of a motion to disqualify counsel has a permanent effect because it is unlikely to be revisited by the trial court. *Id*. at ¶ 10. Similarly, in *State ex rel. McGinty v. Eighth Dist. Court of Appeals*, 142 Ohio St.3d 100, 2015-Ohio-937, 28 N.E.3d 88, ¶ 27, this court held that an order denying a criminal defendant's motion to disqualify the prosecuting attorney was not a final, appealable order. The court noted that allowing an interlocutory appeal in such circumstances would enable a criminal defendant to get "an automatic, months-long delay in his or her prosecution by moving to disqualify the prosecutor and then appealing the resulting denial." *Id*. at ¶ 25.

{¶ 25} In *Cleveland Clinic Found. v. Levin*, 120 Ohio St.3d 1210, 2008-Ohio-6197, 898 N.E.2d 589, ¶ 13, this court held that the Board of Tax Appeals' decision to deny a motion for a protective order, creating the possibility that confidential information could be provided to an opposing party and introduced as evidence, was a final, appealable order because an appeal in the ordinary course

would not adequately remedy the irretrievable loss of confidentiality. Similarly, in *State v. Sahady*, 8th Dist. Cuyahoga No. 83247, 2004-Ohio-3481, ¶ 18-19, the Eighth District Court of Appeals determined that the granting of a criminal defendant's motion for interrogatories was a final, appealable order because the information revealed from those interrogatories could be privileged and could not be clawed back once revealed. The court noted that a successful appeal after final judgment would not provide an effective remedy to the state.

{¶ 26} Finally, in *Blackburn v. Ward*, 4th Dist. Scioto No. 05CA3014, 2006-Ohio-406, ¶ 13, the Fourth District held that a probate court's determination that certain assets belonged to one party and not another was a final, appealable order, despite other issues in the case remaining before the court. The Fourth District reasoned that the assets, which included a farm and personal property, could be liquidated easily and that the appellants, even if successful in a future appeal, would not be able to recover assets that were previously liquidated.

{¶ 27} These cases are instructive. In the case at bar, similar to the situation described by this court in *Wilhelm-Kissinger* regarding disqualification of chosen counsel, the trial court's order appointing a GAL to represent Carol, if left undisturbed, would have an immediate effect; Carol's autonomy would be immediately diminished because she would be treated as though she had been adjudicated incompetent and as a result, her judgment, inclinations, and intelligence would be replaced, at least to some extent, by those of the GAL. Additionally, and again analogous to this court's reasoning in *Wilhelm-Kissinger*, since Carol was not actually adjudicated to be incompetent, it is hard to understand how the trial court could revisit a nonexistent adjudication.

{¶ 28} The concerns this court expressed in *McGinty* are not raised here because there is no reason to believe that Carol is intentionally delaying the progress of the litigation. A criminal defendant's motion to disqualify the prosecutor and subsequent appeal of a denial of that motion are entirely within the

control of the defendant. Here, the court's order sua sponte appointing a GAL to represent Carol without prior notice and an adjudication of incompetency was entirely beyond Carol's control. In such circumstances, any delay caused by an immediate appeal should not be attributed to Carol.

{¶ 29} Divorce settlements often involve negotiation and agreement regarding the distribution of marital assets. If left undisturbed, the trial court's order treating Carol as though she had been adjudicated incompetent would deprive her of autonomy during negotiations. Indeed, a settlement could be negotiated without Carol's independent agreement. Moreover, settlements can include a waiver of the right to appeal. *See, e.g.*, *Shareholders of Paul-Ann Corp. v. Dissolution of Paul-Ann*, 10th Dist. Franklin No. 99AP-828, 2000 WL 726790, *3 (June 6, 2000).

{¶ 30} In addition, negotiation often involves tactics and a careful and selective exchange of information. The tactics used and information revealed by Carol's GAL could not be clawed back—much in the same way that the revelation of confidential information cannot be undone. Thus, as in *Cleveland Clinic Found.* and *Sahady*, confidential information could be exchanged during negotiations and Carol would not have full control over the dissemination of that information. An appeal after final judgment could not undo the damage that she would suffer in such a situation.

{¶ 31} Finally, during divorce proceedings, there are ongoing financial concerns; the level of spousal support may change and some marital assets may be liquidated by agreement. As the Fourth District noted in *Blackburn*, liquidated assets generally cannot be recovered. The preferences of former spouses dividing the assets accumulated during a 30-year marriage could be extremely peculiar to those parties, and there will almost certainly be marital property that has particular value to one or both parties for sentimental or personal reasons. Should Carol's GAL focus on monetary value alone, ignoring other considerations that might form

part of Carol's decision-making process, a future appeal would not protect Carol's interests because previously liquidated assets could never be "un-liquidated."

{¶ 32} While some of the consequences that Carol could suffer as a result of the unavailability of immediate review are potential rather than certain injuries, the immediate effect of, or lack of remedy for, these injuries dictates the need for immediate review. Further, this court has previously held that potential injuries that cannot be remedied are sufficient to meet even the *Bell* standard. *Cleveland Clinic Found.*, 120 Ohio St.3d 1210, 2008-Ohio-6197, 898 N.E.2d 589, at ¶ 13 (interim order immediately appealable in light of "possibility that confidentiality may be irretrievably lost"); *see also Blackburn*, 2006-Ohio-406, at ¶ 13 (order immediately appealable because administrator "could easily liquidate" assets).

{¶ 33} Moreover, as this court stated in *Russell v. Mercy Hosp.*, 15 Ohio St.3d 37, 42, 472 N.E.2d 695 (1984), there are occasions on which judicial economy tips the balance in favor of immediate review. Requiring Carol to wait to appeal until after the divorce proceedings have concluded would require the appellate court to construct a hypothetical proceeding to determine prejudice based on speculation as to how Carol's decisions might have differed from the decisions made by the GAL. In this case, however, the lack of process is readily apparent on the face of the record. Under these unique facts, immediate review requires minimal expenditure of resources by the appellate court.

{¶ 34} For these reasons, we set forth the narrow and limited holding that under R.C. 2505.02(B)(2), a trial court's order appointing a GAL to represent an adult in a divorce case is a final, appealable order when that adult has not been adjudicated incompetent subsequent to providing the parties with notice and an opportunity to be heard on the issue of the adult's competency. In this unique case, the order appointing a GAL to represent Carol is a final, appealable order.

## C. Merits of the Order

{¶ 35} Our determination that the trial court's order appointing a GAL to represent Carol is immediately appealable necessarily required the determination that the lack of process violated Carol's right to due process. Because we have made this determination, it is unnecessary to remand the case to the court of appeals for that court to re-examine this same issue.

{¶ 36} As noted above, Civ.R. 75(B)(2) does not provide the trial court with the authority to appoint a GAL to represent Carol. And Civ.R. 17(B) permits the trial court to appoint a GAL to represent an adult only when the court has adjudicated the adult to be incompetent. As Carol argues in her first and second propositions of law, it violates her right to due process for a court to appoint a GAL to represent an adult without an incompetency adjudication made subsequent to providing that adult proper notice and the opportunity to be heard on the issue.

## III. CONCLUSION

{¶ 37} For the foregoing reasons, the trial court's order is a final, appealable order and the order is vacated. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

Judgment reversed

and cause remanded.

O'DONNELL, FRENCH, and PIETRYKOWSKI, JJ., concur.

O'CONNOR, C.J., concurs, with an opinion.

KENNEDY, J., concurs in judgment only, with an opinion.

DEWINE, J., dissents, with an opinion.

MARK L. PIETRYKOWSKI, J., of the Sixth District Court of Appeals, sitting for O'NEILL, J.

_____

**O'CONNOR, C.J., concurring.**

{¶ 38} I concur in the court's decision to reverse the judgment of the court of appeals and in the majority's holding that the trial court's order appointing a guardian ad litem ("GAL") to represent appellant, Carol Thomasson, is a final, appealable order. I write separately to respond to the dissenting opinion.

{¶ 39} The dissent suggests that the majority has stepped outside the constitutional limits on our authority. I disagree. The appointment of a GAL for a competent adult in this divorce proceeding—when neither party requested it—is clearly without basis in the law. The trial court's order immediately deprived Thomasson of her autonomy and presumes that she cannot represent her own best interests. Delaying her right to appeal until after final judgment would deny her effective relief. Because the order affects Thomasson's substantial right to due process in this divorce proceeding, it is a final order pursuant to the definition codified by the General Assembly in R.C. 2505.02(B)(2)[2] and is subject to immediate appellate review.

{¶ 40} This is not a routine case in which the trial court properly held a competency hearing, determined that a party was incompetent, and appointed a GAL. Here, two days before the scheduled trial, the court sua sponte appointed a GAL on behalf of Thomasson without a demonstrated basis for doing so. The dissent ignores the practical reality of this strange scenario. This case does not present a law-school hypothetical devoid of consequence. The decision to appoint a GAL when one has not been shown to be necessary has both personal and social

---

[2] The General Assembly has classified seven types of orders as final orders. R.C. 2505.02(B). Much of the dissent's focus is on a different standard for a final order—that set forth in R.C. 2505.02(B)(4)—rather than the standard that is at issue here. R.C. 2505.02(B)(4) states that an order is a final order if it grants or denies a provisional remedy and (a) in effect determines the action and prevents judgment in favor of the appealing party with respect to the provisional remedy and (b) precludes a meaningful or effective remedy for the appealing party by an appeal following final judgment. The only question before us is whether the order here meets the standard set forth in R.C. 2505.02(B)(2) in that the order affects a substantial right and was made in a special proceeding.

consequences, not to mention the legal ramifications. The task before us requires that we understand the impact on Thomasson should she be unable to immediately appeal.

{¶ 41} In this proceeding, the mere appointment of the GAL fundamentally affects Thomasson's due-process rights, and having to bear this burden through the divorce proceeding to final judgment and then on appeal would preclude effective relief. The GAL would not necessarily represent Thomasson's interests as she perceives them. For example, when a court appoints a GAL for a child, the GAL must represent the child's best interest even when the representation is inconsistent with the child's wishes. Sup.R. 48(D)(1). If the trial court's order were left undisturbed, then throughout the proceeding, Thomasson would have a burden that no competent adult in a divorce proceeding has—she would have to advocate for her interests in opposition to not just her spouse but also her GAL whenever the GAL's perceptions of her best interests diverged from her own.

{¶ 42} Not important, says the dissent, because "[t]he appointment of the GAL could be revisited if he acted inimically to Thomasson's interests," dissenting opinion at ¶ 78. But Thomasson's interests in whose eyes? Thomasson's autonomy to represent her interests as she defines them should be respected because she has not been determined to be incompetent. The inquiry on appeal would be whether the GAL acted adversely to her *best* interests as the GAL perceived them, not whether Thomasson could prove that the GAL acted inimically to her interests as she perceives them.

{¶ 43} Even if her own perception of her best interests aligned with the GAL's perception of her best interests, Thomasson would be denied effective relief by having to wait to appeal until after final judgment. Through the divorce proceeding and through appeal, Thomasson would bear partial responsibility for compensating the GAL for his services in addition to total responsibility for compensating her lawyer for his services, including the lawyer's efforts ensuring

that the GAL does not take a position that Thomasson believed was adverse to her interests. There is no guarantee that if successful on appeal after final judgment, Thomasson would be refunded, or would be permitted to withhold, her portion of the GAL's expenses even though there was no basis for the GAL's appointment.

{¶ 44} And what a remarkable waste of judicial resources that would be. After final judgment, should an appellate court conclude that the GAL's appointment was not proper as we do here, the entire proceeding would have to start anew. As the dissent recognizes, the case would commence again at the point when the GAL was appointed.

{¶ 45} If the law were as rigid as the dissent suggests, the role of the courts would be extraneous. Judicial restraint is a constant guiding principle in the exercise of our duty as jurists. But using judicial restraint as an excuse for refusing to act when it is necessary is just as dangerous to the role of the judiciary as is judicial activism. Here, quite frankly, we should do our jobs. The majority has recognized the unique facts of this case and applied the law fairly, and narrowly, to those facts. Given the responsibility of this court to interpret and apply the law, the majority today correctly determines that the trial court's order appointing a GAL for Thomasson is a final, appealable order that should be vacated.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 46} I agree with the majority that the trial court's order appointing a guardian ad litem to represent appellant, Carol Thomasson, is a final, appealable order pursuant to R.C. 2505.02(B)(2). I write separately, however, because we need not determine whether the trial court's order affects Carol's constitutional right to due process in order to resolve this case. *See State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9 (this court considers constitutional issues only when absolutely necessary). Instead, R.C. 3109.01 provides Carol a

substantial right that is affected by the trial court's order appointing a guardian ad litem in the divorce action. Therefore, I concur in judgment only.

{¶ 47} The primary goal of statutory construction is to give effect to the legislature's intent. *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 20. To determine the intent of the legislature, we first look to the plain language of the statute. *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). "Where a statute defines terms used therein, such definition controls in the application of the statute * * *." *Good Samaritan Hosp. of Dayton v. Porterfield*, 29 Ohio St.2d 25, 30, 278 N.E.2d 26 (1972), citing *Terteling Bros. v. Glander*, 151 Ohio St. 236, 85 N.E.2d 379 (1949), and *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 267 N.E.2d 781 (1971). When the statute does not define the words used in the statute, we give them their usual and ordinary meaning. *Brecksville v. Cook*, 75 Ohio St.3d 53, 56, 661 N.E.2d 706 (1996).

{¶ 48} To determine whether the trial court's order appointing a guardian ad litem to represent Carol is a final, appealable order, we must begin with R.C. 2505.02(B)(2), which provides that a final order is "[a]n order that affects a substantial right made in a special proceeding." The definition of "substantial right" originated at common law. *See Armstrong v. Herancourt Brewing Co.*, 53 Ohio St. 467, 42 N.E. 425 (1895), paragraphs one and two of the syllabus (a "substantial right" is a legal right protected and enforced by law); *State v. Collins*, 24 Ohio St.2d 107, 110, 265 N.E.2d 261 (1970) (a pretrial order suppressing evidence affects the "substantial right to the diligent prosecution of those accused of crime"). However, the General Assembly displaced this body of common law

by enacting a statutory definition of "substantial right" in 1998. *See* Am.Sub.H.B. No. 394, 147 Ohio Laws, Part II, 3277; *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, ¶ 51. "Substantial right" is defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).

**{¶ 49}** We have stated previously that an "order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993), citing *Union Camp Corp., Harchem Div. v. Whitman*, 54 Ohio St.2d 159, 162, 375 N.E.2d 417 (1978), *State v. Collins*, 24 Ohio St.2d 107, 110, 265 N.E.2d 261 (1970), *Morris v. Invest. Life Ins. Co. of Am.*, 6 Ohio St.2d 185, 189, 217 N.E.2d 202 (1966), and *In re Estate of Wyckoff*, 166 Ohio St. 354, 359, 142 N.E.2d 660 (1957). However, neither *Bell* nor the decisions cited in it discuss the plain and ordinary meaning of "affect," which should be the starting point of our construction of the statute. *See Cook*, 75 Ohio St.3d at 56, 661 N.E.2d 706. In the absence of a statutory definition, we rely on the dictionary definition to accord a term its common, everyday meaning. *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 25-26.

**{¶ 50}** *Collins* highlights the problem that results from failing to begin statutory interpretation with the plain and ordinary meaning of statutory terms. In *Collins*, the issue presented was whether the state, in a criminal case, may appeal a trial court's pretrial order sustaining the defendant's motion to suppress evidence. *Collins* at 107. To resolve the issue, the *Collins* court had to consider whether the order was " 'an order affecting a substantial right.' " *Id.* at 109, quoting R.C. 2505.02. In determining that it was, the court noted:

> The [state] represented in oral argument that the deprivation of the
> use of the evidence suppressed below rendered it virtually

impossible for the state to obtain a conviction, and that without that evidence the prosecution would be terminated. Society has a most substantial right to the diligent prosecution of those accused of crime, and *where prosecution is irretrievably foreclosed through the suppression of evidence*, that right is clearly and adversely affected.

(Emphasis added.) *Id.* at 109-110.

{¶ 51} The *Bell* court latched onto the "foreclosed" language in *Collins* without consideration of its context and imposed as a requirement of R.C. 2505.02(B) that "if not immediately appealable, [the order] would foreclose appropriate relief in the future." *Bell* at 63. In other words, the *Collins* court's reference to the decisive effect of a suppression order in a criminal case—the potential denial of societal justice—has been allowed in *Bell* and *Bell*'s progeny to expand beyond its original context in *Collins*.

{¶ 52} Therefore, I believe that we should reexamine our holding in *Bell* and I diverge from applying it here. Applying our traditional rules of statutory construction, the word "affect" is not defined in the statute. *Webster's Third New International Dictionary* defines "affect" as "to produce a material influence upon or alteration in" or "to have a detrimental influence on." *Webster's Third New International Dictionary* 35 (2002). Similarly, *Black's Law Dictionary* defines "affect" as "[t]o act upon; influence; change; enlarge or abridge; often used in the sense of acting injuriously upon persons and things." *Black's Law Dictionary* 57 (6th Ed.1990). Therefore, an order that is issued in a special proceeding and that materially or detrimentally influences a substantial right is a final, appealable order pursuant to R.C. 2505.02(B)(2).

{¶ 53} Relevant here is R.C. 3109.01, which provides that "[a]ll persons of the age of eighteen years or more, who are under no legal disability, are capable of contracting and are of full age for all purposes." Therefore, absent a legal disability,

a person 18 years old or older is to be treated as a responsible adult in all respects. *See Klever v. Canton Sachsenheim, Inc.*, 86 Ohio St.3d 419, 423, 715 N.E.2d 536 (1999), citing *Winters v. Silver Fox Bar*, 71 Haw. 524, 531-532, 797 P.2d 51 (1990).

{¶ 54} The legislature has not defined "legal disability" for purposes of R.C. Chapter 3109, but it has provided a definition in R.C. 2131.02; while that definition is not controlling here, it does provide guidance. R.C. 2313.02(B) states that "[l]egal disability" includes "[p]ersons of unsound mind." " 'Of unsound mind' includes all forms of derangement or intellectual disability." R.C. 1.02(C). While the legislature has not defined the phrase "all purposes" used in R.C. 3109.01, "all" is defined as "every" or "any whatever," *Webster's* at 54, and we have stated that the term "any" in a phrase envelopes "every" example of the subject described, *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 33; *accord Wachendorf v. Shaver*, 149 Ohio St. 231, 240, 78 N.E.2d 370 (1948). Therefore, as used in R.C. 3109.01, the word "all" is expansive, not limiting. "Purpose" is defined as "something that one sets before himself as an object to be attained." *Webster's* at 1847. Consequently, the General Assembly's use of the phrase "for all purposes" in R.C. 3109.01 is broad and encompasses the right of a person to direct her personal affairs, including being the decision-maker during the course of her divorce proceedings.

{¶ 55} A guardian ad litem has the duty to represent the best interest of the ward, which may be inconsistent with the wishes of the ward. Sup.R. 48(D)(1). However, the legal right to adult status provided by R.C. 3109.01 is enforced and protected by law. *See, e.g.*, *Castle v. Castle*, 15 Ohio St.3d 279, 282, 473 N.E.2d 803 (1984) (termination of parental support); *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 275, 503 N.E.2d 717 (1986) (ability to sue); *Muller v. CES Credit Union*, 161 Ohio App.3d 771, 2005-Ohio-3251, 832 N.E.2d 80, ¶ 22 (5th Dist.) (ability to void contracts upon reaching majority). Therefore, R.C. 3109.01 creates a substantial right. In appointing the guardian ad litem for Carol without a finding of

legal disability, the trial court stripped Carol of her ability to direct her legal affairs according to her wishes, a right guaranteed by R.C. 3109.01.

{¶ 56} Further, the trial court's order detrimentally influenced this substantial right. Carol's legal right to be the decision-maker in her own divorce proceedings—extremely personal litigation, *see Scott v. Scott*, 45 So.2d 878, 879 (Fla.1950) (recognizing "strictly personal and volitional nature" of right to maintain divorce action)—has been denied her, *see In re Irvine's Guardianship*, 72 Ohio App. 329, 331, 51 N.E.2d 907 (5th Dist.1943) (order refusing to remove guardian is final, appealable order because otherwise, ward would be denied ability to exercise substantial right). This is especially true given that the General Assembly has allowed the parties in a divorce proceeding the ability to jointly direct the division of assets and decide parenting matters, *see* R.C. 3015.171(F)(8) and 3105.10(B)(1); *see also* R.C. 3105.10(B)(2) (providing for judicial enforcement of parties' separation agreement); *Greiner v. Greiner*, 61 Ohio App.2d 88, 95, 399 N.E.2d 571 (8th Dist.1979) (separation agreement entered into by parties in divorce proceeding is valid and enforceable), and has provided that the parties may convert a divorce action into an action for dissolution of marriage, *see* R.C. 3105.08.

{¶ 57} The dissent contends that for an immediate appeal to be available to Carol, she "needs to show that any damage done by the [guardian ad litem]'s acts could not be rectified"—that is, that she would "be foreclosed from remedying potential harm after final judgment." Dissenting opinion at ¶ 82. However, this analysis focuses on whether there are prejudicial effects of the order. The focus of the statutory language is on the prejudice to the substantial right resulting from the trial court's order—whether the *right* is *affected* by the order—not the effect of the order on the outcome of the divorce action. It is beyond question that Carol's legal autonomy is prejudiced by the order, and being able to relitigate the action after final judgment and the decree of divorce is entered would never rectify this prejudice. *See Morris v. Invest. Life Ins. Co. of Am.*, 6 Ohio St.2d 185, 188-89, 217

N.E.2d 202 (1966) (trial court's order according litigant whose property rights were being litigated a status less than that of a party was an order affecting a substantial right).

**{¶ 58}** The dissent also contends that this interpretation of R.C. 2505.02(B)(2) would eviscerate the constitutional "final order" requirement and postulates as to various orders in a divorce proceeding that may fall within this interpretation: "an interim custody order, a temporary support order, an order requiring the production of documents, or an order requiring that a child be interviewed by the judge in chambers." Dissenting opinion at ¶ 84. This postulating, however, is unwarranted.

**{¶ 59}** To begin with, as explained above, the plain-language definition of "affect" requires that an order materially or detrimentally influence a substantial right of the appellant, not that the order merely influence a right. The dissent fails to identify any substantial right that may be affected by an order to produce documents (different from what has already been recognized, *see Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 30 (lead opinion)). It is difficult to conceive of a substantial right that may be affected by an order requiring a child to be interviewed in camera given that the legislature has statutorily provided domestic-relations courts with the discretionary power to interview a child in camera to assist in "determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities," R.C. 3109.04(B)(1).

**{¶ 60}** And while a substantial right may be at issue with respect to child-custody and child- and spousal-support orders, the dissent fails to demonstrate how temporary orders—orders that by their very nature remain subject to a final ruling by the court—affect a substantial right. Temporary orders merely preserve the status quo in order to facilitate the needs of the family. *Alteno v. Alteno*, 11th Dist. Trumbull No. 2000-T-0078, 2002 WL 99538, *6 (Jan. 25, 2002); *Ward v. Ward*,

10th Dist. Franklin No. 99AP-66, 2000 WL 552186, *5 (May 4, 2000). The General Assembly has crafted a statutory framework to actualize the specialized work of domestic-relations courts and has prescribed or authorized that temporary orders be issued and that those orders remain in effect only until final orders are issued. *See* R.C. 3125.59 (temporary support orders); R.C. 3105.18(B) (temporary spousal support); R.C. 3109.043 and 3109.04(A) (temporary allocation of parental rights and responsibilities until final award). The Rules of Civil Procedure were enacted in accord with these statutes and aid in the administration of justice in domestic-relations courts. To that end, the rules authorize the issuance of temporary orders, *see* Civ.R. 75(N), and prohibit domestic-relations courts from entering a final judgment until all custody and support issues are "finally determined," Civ.R. 75(F)(2). Therefore, the General Assembly has mandated, and this court has recognized, that temporary orders issued during the pendency of a domestic-relations action are, by their very nature, not final. The order to appoint a guardian ad litem for Carol in this case stands in stark contrast as the order is neither authorized by the Revised Code or the Rules of Civil Procedure, nor is it of a temporary nature.

{¶ 61} R.C. 3109.01 guarantees all persons 18 years old or older who are under no legal disability the right to direct all their personal affairs, including their own divorce litigation. It is a statutory right that a person is entitled to enforce or protect. A trial court's order appointing a guardian ad litem to represent a spouse in a divorce proceeding without a finding of legal disability prejudices the spouse's legal autonomy guaranteed by R.C. 3109.01 and is a final, appealable order pursuant to R.C. 2505.02(B)(2).

{¶ 62} Therefore, I concur in judgment only.

_____

**DEWINE, J., dissenting.**

{¶ 63} The majority is eager to decide this case now. I understand that. If we had jurisdiction to do so, I would like to decide it today as well. But under our Constitution and precedent, we lack jurisdiction. Though it may be temporarily inconvenient, I would adhere to the bounds placed on our authority rather than succumb to the temptation to expand those boundaries for the expediency of immediately deciding this one case.

### Our Constitution Allows Review of Only Final Orders

{¶ 64} Our Constitution provides that courts of appeals "shall have such jurisdiction as may be provided by law" to review "final orders" issued by inferior courts. Ohio Constitution, Article IV, Section 3(B)(2).

{¶ 65} The "provided by law" part of the constitutional grant is accomplished primarily through R.C. 2505.02(B), which defines "final order" by identifying seven categories of orders as final. Relevant here is R.C. 2505.02(B)(2), which includes as a "final order" "[a]n order that affects a substantial right made in a special proceeding."

{¶ 66} The majority is correct that a divorce action is a special proceeding. The question is whether the trial court's order appointing a guardian ad litem ("GAL") for Carol Thomasson "affects a substantial right."

### An Order Affects a Substantial Right Only If an Immediate Appeal Is Necessary to Protect that Right

{¶ 67} In *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993), we held that "[a]n order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." In other words, as we later explained in *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 10, the effect of the order is "irreversible." The critical question in determining whether an order

affects a "substantial right" is whether "an immediate appeal is necessary to protect the right effectively." *Id.* at ¶ 7.

{¶ 68} The definition we adopted in *Bell* is consistent with longstanding principles that generally limit appellate review to final decisions in order to avoid "the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.E.2d 732 (1974). We have found such considerations central to determining whether the special-proceeding prong of the Constitution's final-order requirement has been met. Prior to *Bell*, we furthered these interests through a test that defined "special proceeding" by balancing "the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable." *Amato v. Gen. Motors Corp.*, 67 Ohio St.2d 253, 258, 423 N.E.2d 452 (1981), quoting *State v. Thomas*, 61 Ohio St.2d 254, 258, 400 N.E.2d 897 (1980). We overruled *Amato* and adopted a bright-line definition of "special proceeding" in *Polikoff v. Adam*, 67 Ohio St.3d 100, 616 N.E.2d 213 (1993), syllabus (now embodied in R.C. 2505.02(A)(2)). While we scuttled *Amato*'s test in *Polikoff*, in *Bell*—decided the same day as *Polikoff*—we made clear that an order affects a substantial right only if the unavailability of immediate appeal would preclude effective relief in the future.

### The Limited Need for Immediate Appeal

{¶ 69} Only in the most limited circumstances have we found an immediate interlocutory appeal to be necessary to protect a substantial right. Thus, in *Wilhelm-Kissinger* at ¶ 11, we determined that the denial of a husband's motion to disqualify his wife's counsel in divorce proceedings was not a final order. We explained that there was no substantial right to disqualify opposing counsel and, germane to our discussion here, that the trial court's order "lacks a * * * permanent effect," *id.* at

¶ 10. In other words, the effect of the court's order was not irreversible. Nor is the denial of an agency's motion to modify temporary custody of a child to permanent custody irreversible: "While the agency must wait longer for the final outcome of the neglect and dependency action, the continuation of temporary custody does not foreclose appropriate relief in the future." *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886, ¶ 44. Such an order, therefore, is not a final order under R.C. 2505.02(B)(2).

{¶ 70} On the other hand, we have concluded that the denial of a protective order in a tax-appeal case was a final order because, we reasoned, the release of confidential information would have "no remedy." *Cleveland Clinic Found. v. Levin*, 120 Ohio St.3d 1210, 2008-Ohio-6197, 898 N.E.2d 589, ¶ 12. Once disclosed, the confidentiality of the information would be "irretrievably lost." *Id.* at ¶ 13.

{¶ 71} Further guidance is provided by cases decided under R.C. 2505.02(B)(4), which includes as final orders certain provisional remedies. As with an order in a special proceeding, an order granting or denying a provisional remedy is not a final order unless "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment." R.C. 2505.02(B)(4)(b).

{¶ 72} We recently explained that when "determining whether appeal after final judgment would afford a meaningful or effective remedy, we consider whether there is a harm such that appeal after final judgment would not ' "rectify the damage." ' " *In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, ¶ 18, quoting *State v. Muncie*, 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001), quoting *Gibson-Myers & Assocs., Inc. v. Pearce*, 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999).

{¶ 73} In *In re D.H.*, we applied the rule to determine that a juvenile court's order transferring jurisdiction of a case to adult court was not final. The effect of

the order, if wrong, could be rectified or reversed following final judgment. *Id.* at ¶ 19. Our decision in *In re D.H.* can be contrasted with that in *Muncie*, in which we concluded that an order compelling the medication of a defendant to restore competency was a final order, *Muncie* at 452. The effects of the medication, once administered, could not be reversed. " '[T]he proverbial bell cannot be unrung.' " *Id.* at 451, quoting *Gibson-Myers & Assocs.* at *2.

{¶ 74} Other decisions under R.C. 2505.02(B)(4) accentuate the limited circumstances in which a party would be foreclosed from effective relief by having to wait to appeal until final judgment. The passage of time will not render a future appeal ineffective. *In re D.H.* at ¶ 19. Nor will the potential for high litigation costs. *Gardner v. Ford*, 1st Dist. Hamilton No. C-150018, 2015-Ohio-4242, ¶ 8. But "an order enforcing a grand-jury subpoena and ordering production of allegedly privileged information is a final order pursuant to R.C. 2505.02(B)(4)." *In re Grand Jury Proceeding of John Doe*, 150 Ohio St.3d 398, 2016-Ohio-8001, 82 N.E.3d 1115, ¶ 23.

## The Unavailability of Immediate Appeal Here Would Not Foreclose Appropriate Relief

{¶ 75} Thomasson does not suggest why she would be foreclosed from relief from any harm visited upon her by the court's appointment of a GAL if she must wait until final judgment before she may appeal. Her analysis stops with the identification of the substantial right involved—her right to due process. But there is no reason that any harm could not be remedied on appeal in the ordinary course. The general rule is that upon reversal and remand to the trial court, proceedings commence at the point when the error occurred. *Armstrong v. Marathon Oil Co.*, 32 Ohio St.3d 397, 418, 513 N.E.2d 776 (1987); *accord Montgomery Cty. Commrs. v. Carey*, 1 Ohio St. 463 (1853), paragraph one of the syllabus. Thus, if Thomasson were ultimately successful on appeal from final judgment in challenging the

appointment of the GAL, the matter would be returned to the trial court for proceedings that would commence at the point when the GAL was appointed.

{¶ 76} Nor does the majority present a compelling explanation of why any harm could not be corrected on appeal after final judgment. Indeed, the majority cites four cases to support its conclusion that a procedurally improper appointment of a guardian violates constitutional due-process guarantees. But in each of these cases, the harm was remedied without resort to an interlocutory appeal—in three, by way of an appeal after final judgment, *see In re Joann E.*, 104 Cal.App.4th 347, 128 Cal.Rptr.2d 189 (2002); *State v. Ladd*, 139 Vt. 642, 644, 433 A.2d 294 (1981); *J.H. v. Ada S. McKinley Community Servs., Inc.*, 369 Ill.App.3d 803, 861 N.E.2d 320 (2006).

{¶ 77} Instead of explaining why any harm could not be corrected on appeal after final judgment, the majority offers only conjecture and a few out-of-context lines cherry-picked from our caselaw. For instance, the majority cites *Wilhelm-Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, in support of its position that the order appointing a GAL for Thomasson is final because it "would have an immediate effect." Majority opinion at ¶ 27. Of course it would. But the question here isn't whether the order has an immediate effect. Rather, we must determine whether that immediate effect would be irreversible. Moreover, our discussion in *Wilhelm-Kissinger* about the immediacy of the order's effect was not in regard to whether the order *affected* a substantial right but whether there was a substantial right involved at all:

> [A]n order granting disqualification immediately and definitely affects the party it deprives of chosen counsel; the purpose of appealing such an order is to prevent the removal itself. By contrast, an order denying disqualification, standing alone, affects no right

held by the unsuccessful movant because there is no substantial right to disqualify opposing counsel.

*Wilhelm-Kissinger* at ¶ 9.

{¶ 78} The majority also cites *Wilhelm-Kissinger* to suggest that the trial court's order appointing a GAL must be immediately appealable because the order could not be revisited in the midst of proceedings. But a closer reading of the decision results in the opposite conclusion. In *Wilhelm-Kissinger*, we distinguished between an order granting a motion to disqualify counsel (a final order) and one denying such a motion (not a final order). In the former case, we reasoned, the decision would not likely be revisited, presumably because counsel, once disqualified, would no longer be participating. In contrast, the denial of a motion to disqualify could be reconsidered during the proceedings and counsel could be removed. Contrary to the majority's suggestion, the court's order appointing a GAL in this case is closer in kind to the denial of a motion to disqualify counsel. The appointment of the GAL could be revisited if he acted inimically to Thomasson's interests.

{¶ 79} The majority speculates about other problems that could arise due to the appointment of a GAL for Thomasson. It frets, "[A] settlement could be negotiated without Carol's independent agreement. Moreover, settlements can include a waiver of the right to appeal." Majority opinion at ¶ 29. Left unexplained by the majority is why, if Thomasson successfully challenged the appointment of the GAL following final judgment, any actions taken by the GAL against her interest would not also be subject to reversal.

{¶ 80} Continuing its litany of potential problems brought on by the appointment of a GAL, the majority suggests that "[t]he tactics used and information revealed by Carol's GAL could not be clawed back—much in the same way that the revelation of confidential information cannot be undone." *Id.* at ¶ 30.

28

Exactly what tactics used and information revealed is not explained. Presumably, any "tactics used" by the GAL could be replaced by different tactics upon remand following a successful appeal upon final judgment. And any confidential information would be subject to the same rules that apply to confidential information in other cases.

{¶ 81} Anticipating criticism about the speculative nature of its concerns, the majority points to language in *Cleveland Clinic*, 120 Ohio St.3d 1210, 2008-Ohio-6197, 898 N.E.2d 589, at ¶ 13, in which we discussed "the possibility that confidentiality may be irretrievably lost" and concluded that the possibility made future appeal ineffective. But there we were confronted with actual confidential information that was the subject of a protective order. Here, we are left with little more than concerns imagined by the majority.

{¶ 82} In short, the majority fails to consider the real question—if Thomasson were made to wait to appeal, would she be foreclosed from an appropriate remedy? In the context of the provisional-remedy exception found in R.C. 2505.02(B)(4), we have distinguished between the order itself and the harm caused by the order: "[T]he irreversible nature of the order alone does not satisfy R.C. 2505.02(B)(4)(b), which requires consideration of whether an appeal after judgment can rectify the damage of an erroneous trial court ruling." *Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 21 (lead opinion). Likewise, Thomasson needs to show that any damage done by the GAL's acts could not be rectified. In none of the scenarios suggested by the majority would Thomasson be foreclosed from remedying potential harm after final judgment.

{¶ 83} The two concurring opinions fare no better in their attempt to justify the court's action today. While the majority opinion at least makes an effort to distinguish *Bell*, the first concurring opinion chooses to pretend that line of precedent doesn't exist. Instead, that opinion offers a full-throated policy argument for why this case MUST be decided now. The opinion says that if the decision

were reversed on appeal after final judgment, there would be a "waste of judicial resources," concurring opinion of O'Connor, C.J., at ¶ 44; never mind that that argument can be made in every case in which an immediate appeal is sought. (One must question whether judicial resources are being conserved here: presumably on remand, the domestic-relations court could simply hold a hearing and again appoint a GAL, likely starting another round of appeals.) The opinion implores that this is not a "routine case" or a "law-school hypothetical devoid of consequence," *id.* at ¶ 40, criticizes this dissent for ignoring the "practical reality," *id.*, and demands that we "do our jobs," *id.* at ¶ 45. I agree with that last part. We should do our jobs. And fundamental to doing our jobs is following the law. Even in hard cases.

{¶ 84} The opinion concurring in judgment only is similarly unpersuasive. Tacitly acknowledging that the majority's result cannot be reconciled with our holdings in *Bell* and its progeny, the opinion would have us "reexamine" and "diverge" from our holding in *Bell*. Concurring opinion of Kennedy, J., at ¶ 52. The opinion maintains that R.C. 2505.02(B)(2) does not require determining whether an adequate remedy would exist after final judgment. Instead, any "order that is issued in a special proceeding and that materially or detrimentally influences a substantial right is a final, appealable order." Concurring opinion of Kennedy, J., at ¶ 52. But if such a view were to carry the day, the constitutional "final order" requirement would be eviscerated in any action that constituted a "special proceeding." Think about the various orders that might be issued in a divorce proceeding: an interim custody order, a temporary support order, an order requiring the production of documents, or an order requiring that a child be interviewed by the judge in chambers—to name just a few. Under the opinion, it does not matter whether the harm done could be rectified upon appeal at the end of the case; all of these orders would be immediately appealable. Talk about a recipe for a never-ending divorce. What would be most special about special proceedings is that they could drag on forever.

**{¶ 85}** The opinion downplays the impact its new rule would have on our final-order requirement by attempting to distinguish an order appointing a GAL from other domestic-relations orders. But its effort falls short. Any number of domestic-relations orders made contrary to a party's interest could be said to "detrimentally influence" a right that falls within the broad definition of "substantial right"—that is, "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect," R.C. 2505.02(A)(1). For example, our civil rules provide the procedure for the production of a party's documents. *See* Civ.R. 26. An order to produce financial statements in a divorce proceeding could be detrimental—that is, harmful—to the rights protected by the civil rules. Likewise, an order involving a child could detrimentally affect a parent's right to raise her child—a right we have recognized as " 'essential' " and as a " 'basic civil right,' " *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.E.2d 551 (1972).

**{¶ 86}** That our civil rules and statutes provide that some domestic-relations orders are temporary does not change the analysis. Our rules also provide for the appointment of a GAL in domestic-relations cases, *see* Civ.R. 17(B). And like temporary custody, *see* R.C. 3109.043, or temporary spousal support, *see* R.C. 3105.18(B), a GAL's appointment is only for the duration of the case, *see State ex rel. Robinson v. Cuyahoga Cty. Court of Common Pleas*, 75 Ohio St.3d 431, 662 N.E.2d 798 (1996). Just because we may conclude that the trial court did not follow the proper procedures in appointing the GAL does not render the order immediately appealable.

**{¶ 87}** Rather than meaningfully distinguishing other domestic-relations orders from the one here, the opinion concurring in judgment only lays bare the problem common to the paths suggested by the majority and concurring opinions: the desired result drives the analysis at the expense of our final-order jurisprudence.

The paths are tempting: gloss over the Constitution's final-order requirement so we can immediately fix what happened below. But to bite that apple does more damage than good. As Judge Adams explained in a passage quoted by the United States Supreme Court:

"[I]t would seem to us to be a disservice to the Court, to litigants in general and to the idea of speedy justice if we were to succumb to enticing suggestions to abandon the deeply-held distaste for piecemeal litigation in every instance of temptation. Moreover, to find appealability in those close cases where the merits of the dispute may attract the deep interest of the court would lead, eventually, to a lack of principled adjudication or perhaps the ultimate devitalization of the finality rule * * *."

*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 440, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), quoting *Bachowski v. Usery*, 545 F.2d 363, 373-374 (3d Cir.1976). That this may be a hard case does not make it one in which we should abandon the constitutional limits on our authority.

### Conclusion

{¶ 88} Because Thomasson can demonstrate no irreversible harm occasioned by the appointment of a GAL, we should require that her appeal await final judgment. I respectfully dissent.

_____

Stafford Law Co., L.P.A., Joseph G. Stafford, and Nicole A. Cruz, for appellant.

_____