[Cite as *Thompson v. Myers*, 2019-Ohio-2299.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| BRIDGETT THOMPSON, GUARDIAN OF BRENDA MYERS | : | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellant/Cross-appellee | : | |
| -vs- | : | Case No. 2018 AP 11  0036 |
| DAVID L. MYERS, SR., ET AL. | : | |
| Defendants-Appellees/Cross-appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 2017 TM 07 0244

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      June 10, 2019

APPEARANCES:

For Appellant/Cross-appellee
Bridgett Thompson
PAUL HERVEY
200 Market Avenue
Suite 300
Canton, OH 44702

For Appellee Jean Tisdall
J. KEVIN LUNDHOLM
300 E. Third Street
Dover, OH 44622

For Appellee/Cross-appellant
David Myers, Sr.
MICHAEL JOHNSON
P.O. Box 1007
New Philadelphia, OH 44663

*Gwin, P.J.*

{¶1} Appellant/cross-appellee Bridgett Thompson, as Guardian of Brenda Myers, and appellee/cross-appellant David L. Myers appeal the October 24, 2018 judgment entry of the Tuscarawas Court of Common Pleas.

*Facts & Procedural History*

{¶2} On July 10, 2017, appellant/cross-appellee Bridgett Thompson ("Thompson"), Guardian of the Person and Estate of Brenda Myers ("Wife") filed a complaint for divorce against appellee/cross-appellant David L. Myers ("Husband"). Thompson also included Delores Jean Tisdall ("Tisdall"), Husband's paramour, as a defendant in the divorce action.  The parties had been married for over thirty years.  They had no children together, but each have children from their first marriages.

{¶3} In 2016, the Tuscarawas County Probate Court appointed Thompson as the guardian of the person and guardian of the estate for Wife.  Husband appealed that decision to this Court, arguing the trial court abused its discretion in appointing Thompson as Wife's guardian.  In *In re: Brenda Myers*, 5th Dist. Tuscarawas No. 2016 AP 05 0028, 2017-Ohio-603, we affirmed the trial court.  Prior to the filing of this case, the Tuscarawas County Probate Court issued an order authorizing Thompson to file the divorce action.

{¶4} The magistrate held a hearing with regards to temporary orders on November 29, 2017.  The magistrate issued a detailed order with extensive findings of fact on December 5, 2017.  Thompson filed objections and a motion to set aside on December 15, 2017.  Thompson did not provide the trial court with a transcript of the November 29, 2017 hearing.  The trial court overruled Thompson's objections and motion to set aside on January 9, 2018.

{¶5}  On September 14, 2017, Husband filed a motion to appoint a Guardian Ad Litem for Wife.  The magistrate granted the motion on December 5, 2017 and appointed Attorney Kristin Zemis ("Zemis") as Guardian Ad Litem for Wife.  Thompson filed a motion to set aside on December 15, 2017.  On January 9, 2018, the trial court overruled the motion.

{¶6}  Tisdall filed a motion to dismiss on April 26, 2018, arguing she should be dismissed from the case because the trial court did not have personal jurisdiction over her.  Prior to the beginning of the trial on May 3, 2018, the magistrate dismissed Tisdall as a party.

{¶7}  Additionally, during the trial, the parties came to a partial agreement.  The partial agreement was memorialized in an agreed magistrate's order.  The parties: agreed to the granting of the divorce; stipulated the parties have lived separate and apart continuously for more than one year; agreed Myers Machining, Inc. and the real estate owned by Edifiee Ltd. shall be sold and the net proceeds divided equally between the parties; agreed the Ridge Avenue property and vehicles shall be sold by auction and the net proceeds divided equally; agreed each party shall keep their personal items and personal property free from claim of the other party; agreed that to satisfy Thompson's debt to Husband, she shall pay $2,000 to Husband and $2,000 to the Guardianship account of Wife; agreed Husband will keep the debt owed by Gary Stanley and if any collected thereon, the net proceeds shall be equally divided between the parties; agreed the Stanley debt shall not count against either party in the division of marital assets; David Myers Jr., Husband's son, agreed to waive any inheritance from Wife; agreed all other actions pending or which could be filed in Probate Court will be dismissed; agreed

Thompson will keep all insurance policies titled to or on the life of Wife without claim by Husband; agreed Husband shall keep all insurance policies and annuities owned by him on his life without claim by Wife, with the exception of the policy owned by Myers Machining, which shall be distributed as part of the division of corporate assets; agreed Thompson, David Myers Jr., and Gary Stanley shall transfer their one share of stock each back to Myers Machining without consideration; agreed Husband shall continue to run Myers Machining at his current salary; agreed Husband shall continue to pay $4,000 per month for the benefit of Wife as temporary orders until he ceases to work for Myers Machining; agreed David Myers Jr. shall be dismissed as a party to the action; agreed to dismiss the motion for contempt against Thompson; and agreed Husband shall pay up to a total of $6,400 for appraisal and evaluations.

{¶8} After the parties came to the partial agreement, the parties agreed that there were three outstanding issues left for trial:  spousal support, attorney fees, and the equalization of the bank accounts.  The magistrate took evidence on the remaining issues.

{¶9} Zemis stated Wife requires full-time care, although she is in good physical condition.  Zemis testified the current monthly financial need to care for Wife is between $857 and $1,350 per month.

{¶10} On cross-examination, Husband stated he does not have any plans for after Myers Machining is sold.  He may or may not work.  Husband testified he has two bank accounts, one in Huntington Bank in Bolivar and one in TD Bank in Florida, with approximately $8,000 in the Huntington account and approximately $76,000 in the TD Bank account.  Husband puts $2,000 per pay in the Huntington account, $2,000 in a

Chase account for Wife's support, and the balance in the TD Bank account. Husband testified he put about $80,000 into upgrading the pole barn at the house he lives in now.

{¶11} On direct examination, Husband testified he receives a gross salary of about $152,000, about one-third of which is withheld for taxes. Husband receives $32,355 per year in Social Security and Wife receives $16,117 per year in Social Security. Once the business is sold, Husband will no longer have a job and he does not plan to work anywhere else since he is seventy years old. Husband testified to his monthly expenses. Husband stated that, when the parties sold the marital residence, the proceeds were split equally. The $63,000 Husband received from the sale of the marital home he deposited in the TD Bank account.

{¶12} Thompson testified Wife has Wernicke's Encephalopathy, which is a lot like dementia. Starting in approximately 2008 or 2009, there was a home healthcare worker who stayed with Wife from 10:00 a.m. until 7:00 p.m. In 2013, Husband found a live-in healthcare worker to care for Wife and when the live-in was off, Wife came to Thompson's house. Thompson worked at Myers Machining during that time. Thompson has been providing around the clock care for Wife for the past three years. Thompson testified Wife currently needs someone to watch her full-time, remind her to take her medicine, bathe her, do her laundry, and clean the house. Thompson stated the $875 to $1,350 per month is accurate for Wife's monthly care, but does not include things Wife doesn't pay directly, but is shared with Thompson and her husband. Thompson has investigated replacing her care with a professional or a private provider. Thompson stated home healthcare nurses run about $18 per hour and if Thompson got a job, it would be about $4,000 per

month to have someone come in and watch Wife. Thompson testified the dentist is formulating a plan to do some dental implants and permanent dentures for Wife.

{¶13} The magistrate asked Thompson if everything Husband and Wife own is sold and the proceeds divided equally, does Thompson believe there would be enough money to take care of Wife, and Thompson stated she did not know. Thompson believes in the future if Wife has to go to a nursing home it will cost $7,000 per month and home healthcare would cost $3,000 to $4,000 per month.

{¶14} Thompson testified Wife does not have any income other than her social security and the $4,000 in temporary support. Thompson stated Husband and Wife agreed he would take the higher amount of social security for tax purposes. Wife's guardianship account is at Huntington Bank and has a balance of approximately $15,000. The Probate Court has authorized Thompson to take out $4,500 every month for Wife's care. Thompson testified she would take care of Wife regardless of whether or not Wife had any money.

{¶15} On cross-examination, Thompson testified that during their marriage, Husband and Wife would spend whatever money came in. They did not put money into retirement or investments, because they felt the shop was their retirement and it would provide them an income for the rest of their lives. Thompson stated they tried senior day care before and it did not work, so she did not check into the cost. Thompson used the $63,000 from Wife's share of the proceeds from the marital property to pay expenses. Thompson does not have any evidence to dispute that Husband put his $63,000 into the TD Bank account. Thompson agrees that $63,000 is his separate property.

{¶16} Thompson charges Wife one-third of the payment on a new car Thompson purchased, one-third of the house payment, one-third of the water bill, and one-third of all household and related expenses, including cell phone, water, electric, and cable television. Thompson testified she was not sure how to determine the household expenses with regards to Wife and Zemis told her to divide the household expenses into thirds, since three people live in the house, so that is what Thompson did.

{¶17} On re-direct, Thompson testified she is reimbursing herself $3,000 per month to take care of Wife. When she looked into finding alternative care so she could work every day full-time, it would be about $4,000 per month.

{¶18} At the hearing, the magistrate took judicial notice of the testimony at the temporary orders hearing on November 29, 2017.

{¶19} The magistrate issued a decision on the remaining issues on June 18, 2018. In her findings of fact, the magistrate found: Wife has Wernike's Encephalopathy, similar to dementia, as a result of treatment for leukemia and thus needs around the clock supervision and assistance with self-care; the parties own Myers Machining Inc., which has been their income throughout the marriage and Husband still works there although he is 70 years old; the sale of the business will result in Husband being unemployed and Wife is unable to work due to her disability and thus both parties will have to use their social security benefits and proceeds from the sale of assets to pay their living expenses; despite Thompson's argument, there is not a bottomless bucket of money; after the divorce, Wife will have to pay for her own health insurance, uninsured medical bills, all of her care, and tax obligations and thus the divorce may increase the financial burden on Wife; because Thompson did not provide the value of Wife's insurance policies, there is

no estimation of her available assets for investment for her future care; Wife is receiving good care from Thompson in Thompson's home; Thompson testified that it costs between $800 and $1,300 per month to care for Wife, but Thompson charges Wife one-third of the cost of the cell phone plan, one-third of the house payment, one-third of the insurance, one-third of Thompson's vehicle payment, one-third of internet cost, although none of those expenses are impacted by Wife living with Thompson; Thompson takes $4,500 per month to care for Wife, as that is the amount the Probate Court permitted; Thompson chose to leave employment to provide care for Wife; Thompson was dissatisfied with the care Wife received in a residential facility Husband had placed her and for which he paid; Thompson felt she had a choice between quitting her job and losing that income in order to provide quality care for Wife; and there is presently no money being set aside for Wife's future care, as Thompson uses the majority of it to compensate herself.

{¶20} As to spousal support, the magistrate found Thompson was unable to specify an amount to provide for Wife's future care because she has not attempted to calculate the needs for Wife's future. The magistrate noted Wife's monthly social security is $1,317.18 per month. The magistrate agreed with the GAL that once the business is sold and Husband is unemployed, he will not be able to provide much spousal support because his only income will be social security.

{¶21} The magistrate reviewed the factors contained in R.C. 3105.18(C)(1) and found as follows as to each factor: (a) each party will receive 50% of the proceeds from the sale of the assets, Husband's social security is higher than Wife's as his is $2,644.00 per month compared to her $1,328 per month; (b) both parties are over the age of retirement and Wife cannot work; (c) Wife is disabled, Husband is healthy except for back

surgery; (d) both parties receive social security and Husband has an annuity from which he will soon have to begin taking required minimum distributions; (e) it is a marriage of thirty-five years; (f) this factor does not apply; (g) the parties freely spent whatever income they had, there are no savings and no retirement benefits beyond social security, Thompson has unreasonable expectations regarding spousal support; (h) this factor does not apply; (i) the parties have no debts, Husband has social security and an annuity, Wife has social security and a life insurance policy with cash value, all other assets will be sold and divided equally; (j) and (k) do not apply; (l) spousal support is taxable to the recipient and deductible to by the payor, the parties anticipate having capital gains tax; (m) does not apply; and (n) Wife has unusual long-term care needs.  The magistrate found, though it is a long-term marriage, each party is leaving the marriage with essentially equal financial states.  The magistrate determined it is appropriate to equalize the parties' social security benefits and thus Husband should pay Wife $669.50 per month in spousal support, as permanent spousal support, effective the first month after the sale of the business.  The magistrate ordered Husband to continue paying $4,000 per month until the sale of the business.

{¶22} Thompson argued Wife's attorney fees should be paid by Husband.  The magistrate found that, pursuant to the parties' agreement, they will each receive substantial funds from the sale of their assets.  The magistrate noted Wife's attorney fees as of March 31, 2018 totaled $22,750 and she expended significant funds in the Probate Court.  The magistrate found it appropriate for each party to pay their own attorney fees from the assets allocated to them, as each party will essentially have equal assets.

{¶23}  Thompson sought to equalize the parties' bank accounts.  As of the date of the hearing, Husband's bank account balances were approximately $84,000 and Wife's account balances were approximately $15,000.  The magistrate found Thompson failed to take into account that when the parties sold the marital home they each received approximately $63,000 and while Thompson has spent Wife's entire $63,000, the undisputed testimony at the hearing was that Husband's $63,000 was used to improve the pole building where he resides in the motor home.  Since the pole building and motor home will be sold and the proceeds divided equally as part of the parties' settlement, Wife will be receiving some of Husband's separate $63,000.  Accordingly, that amount must be offset against other assets.  The magistrate reasoned that when $63,000 is subtracted from Husband's balance, his balance is $21,000 and he owes $6,400 for appraisal costs, thereby reducing his account to $14,600.  Thus, in order to equalize the accounts, Wife would have to pay Husband $200.  The magistrate thus found the parties' accounts will be already approximately equalized once the assets are sold and divided equally.

{¶24}  Thompson filed objections to the magistrate's decision on July 2, 2018 and a supplemental brief on August 30, 2018.  The trial court held a hearing on the objections to the magistrate's decision on August 27, 2018.

{¶25}  The trial court issued a judgment entry on October 24, 2018.  The trial court found that whether Tisdall is a resident of Ohio is not determinative of whether Ohio has personal jurisdiction over her.  Further, that the magistrate erred by dismissing Tisdall without holding an evidentiary hearing to determine whether the court has personal jurisdiction over her.  However, the trial court found the dismissal of Tisdall did not affect the outcome of this case and was harmless error because there were only three

substantive issues left for the magistrate to hear following the dismissal of Tisdall, and none of those issues were affected by the improper dismissal. The trial court found that Husband paid his attorney fees and the attorney fees of others related to this divorce case before the division of marital assets and thus it would be equitable for the parties to split the cost of Wife's attorney fees related to the divorce. The trial court determined Husband should pay attorney fees to Wife's counsel in the amount of $12,000.

{¶26} As to spousal support, the trial court found the amount of spousal support recommended by the magistrate is appropriate based upon the current plans and needs of the parties. However, the trial court retained jurisdiction over the issue of spousal support. The trial court found the magistrate's determination as to the bank accounts is supported by the evidence and no further division of the parties' bank accounts is necessary or appropriate.

{¶27} Thompson appeals the October 24, 2018 judgment entry of the Tuscarawas County Court of Common Pleas and assigns the following as error:

{¶28} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO INCLUDE THE BANK ACCOUNTS AS MARITAL ASSETS SUBJECT TO DIVISION.

{¶29} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS AWARD OF SPOUSAL SUPPORT.

{¶30} "III. THE TRIAL COURT ERRED AND DENIED THE WARD DUE PROCESS OF LAW IN APPOINTING A GUARDIAN AD LITEM.

{¶31} "IV. THE TRIAL COURT ERRED IN DISMISSING APPELLEE TISDALL AND HER TRUST AS PARTIES.

**{¶32}** "V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN LIMITING EVIDENCE AS TO FINANCIAL MISCONDUCT."

**{¶33}** Husband appeals the October 24, 2018 judgment entry of the Tuscarawas County Court of Common Pleas and assigns the following as error:

**{¶34}** "I. THE TRIAL COURT COMMITTED ERROR AND ABUSED ITS DISCRETION IN AWARDING ADDITIONAL ATTORNEY FEES TO APPELLANT."

I.

**{¶35}** In her first assignment of error, Thompson argues the trial court abused its discretion in failing to include the bank accounts as marital assets subject to division. Thompson contends the trial court abused its discretion in failing to identify a de facto termination date of the marriage and in failing to include the bank accounts in the marital estate. We disagree. In the agreed entry, the parties agreed that certain property is separate property and agreed that other marital assets would be sold and equally divided between the parties. The parties stipulated as to the divorce and the grounds for the divorce. The parties agreed, as did counsel for the parties, that the only three issues remaining for trial were: attorney fees, spousal support, and equalization of the bank accounts. The magistrate did include the bank accounts in the marital estate, but determined that the accounts were already equalized once the assets are sold and divided equally.

**{¶36}** Thompson further argues the trial court abused its discretion in failing to equally or equitably divide the bank accounts as marital assets. We disagree.

**{¶37}** The Revised Code requires a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide

the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).  The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property.   R.C. 3105.171(E).   A trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property.  *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982).  The trial court's judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion.  *Id.*  An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶38}**  The party in a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of the evidence.  *Zeefe v. Zeefe*, 125 Ohio App.3d 600, 709 N.E.2d 208 (8th Dist. Cuyahoga 1998).  The characterization of property as separate or marital is a mixed question of law and fact, and the characterization must be supported by sufficient, credible evidence.  *Chase-Carey v. Carey*, 5th Dist. Coshocton No. 99CA1, 1999 WL 770172.  "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion."  *Vonderhaar-Ketron v. Ketron*, 5th Dist. Fairfield No. 10 CA 22, 2010-Ohio-6593.

**{¶39}**  Upon review, we find the trial court did not abuse its discretion in the equalization of the bank accounts.  Husband testified his bank account balances were approximately $84,000.  Thompson testified the guardianship account has a balance of approximately $15,000.   Husband testified that when the parties sold the marital

residence, he deposited his portion of the sale of the marital residence, $63,000, into his TD Bank account and used it to improve the pole building which will be sold and the proceeds divided equally between the parties.  Thompson stated she does not have any evidence to dispute that Husband put his $63,000 into the TD Bank account and used it to improve the pole building.  Thompson also specifically testified that she agreed that the $63,000 was Husband's separate property.  Further, the evidence at trial demonstrates Husband will pay $6,400 for appraisals out of the TD Bank account.  The remainder of the division of the marital property and determination of separate versus marital property was completed via the agreement and stipulation of the parties.  Thompson's first assignment of error is overruled.

II.

**{¶40}** In her second assignment of error, Thompson contends the trial court abused its discretion as to its determination of spousal support.  Specifically, Thompson argues the trial court failed to consider all the statutory factors in fashioning the amount of spousal support, in that the trial court ignored the extraordinary costs Wife has and continues to have for her care.  Further, that the trial court failed to wait and see what the sale of the assets would bring to the parties.

**{¶41}**  A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion.  *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83 (1990).  An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).  R.C. 3105.18(C)(1) provides that a trial court may award spousal support when it is "appropriate and reasonable."  R.C.

3105.18(C)(1) sets forth the factors a trial court must consider when determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support.

{¶42} These factors include: (a) income of the parties, from all sources * * *; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; * * * (g) the standard of living the parties established during the marriage; * * * (i) the relative assets and liabilities of the parties; * * * (l) the tax consequences, for each party, of an award of spousal support; * * * and (n) any other factor that the court expressly finds to be relevant and equitable.

{¶43} Trial courts must consider all the relevant factors listed in R.C. 3105.18(C). However, a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C) and we may not assume that the evidence was not considered. *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist). The trial court need only set forth sufficient detail to enable a reviewing court to determine that appropriateness of the award. *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

{¶44} The magistrate considered all the relevant factors of R.C. 3105.18 in determining the amount of spousal support that is appropriate and reasonable. Despite Thompson's argument, the magistrate and trial court in this case did consider the extraordinary costs Wife has and continues to have for her care. The magistrate specifically found as to factor (n), any other factor that the court expressly finds to be relevant and equitable, "Wife has unusual long-term care needs."

**{¶45}** What Thompson disputes is the determination of the magistrate and trial court that Thompson's monthly request for support was too high, given the speculative nature of the amount needed for her care.  Zemis testified the current monthly financial need to care for Wife is between $857 and $1,350 per month.  Thompson stated the $875 to $1,350 per month is accurate for Wife's monthly care, but does not include things Wife does not pay directly, but is shared with Thompson and her husband.  Thompson believes if she returns to work, it would be about $3,000 to $4,000 per month to have someone come in and watch Wife.  Thompson does not know if there will be enough money to take care of Wife once the assets and business are sold because it is not clear when Wife may need nursing care.

**{¶46}** The weight to be given to the evidence and credibility of the witnesses are issues for the trier of fact.  *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), *certiorari denied*, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183 (1990).  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."  *Davis v. Flickinger*, 77 Ohio St.3d 415 674 N.E.2d 1159 (1997). Additionally, the fact that Wife has unusual long-term care needs is only one factor the trial court could consider in making the determination as to spousal support.  *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

**{¶47}** In this case, it is clear from the record the magistrate and trial court considered the factors enumerated in R.C. 3105.18 in determining whether spousal support was appropriate and the amount of spousal support that was appropriate and reasonable.  The magistrate and trial court determined that each party is leaving the marriage with equal financial states and thus, based upon the factors contained in R.C.

3105.18(C), it is appropriate and reasonable to equalize the parties' monthly social security benefits after the business and other assets are sold.  Upon our review of the record, we find no abuse of discretion in this determination.

**{¶48}**  As to Thompson's argument that the trial court should have waited until the assets are sold to determine spousal support, the testimony in this case is that both parties considered the business to be their retirement that would provide them an income for the rest of their lives.  The parties agreed this primary retirement asset would be sold, with the proceeds divided equally between them.  Both parties have to agree on the price for the sale of the business.  Additionally, the trial court retained jurisdiction over the issue of spousal support.  Thus, should circumstances change, Thompson can return to the trial court upon the proper motion.  *Dodson v. Dodson*, 5th Dist. Stark No. 2001CA00327, 2002-Ohio-3091.  We thus find it was not an abuse of discretion to determine spousal support at the trial.

**{¶49}**  Thompson's second assignment of error is overruled.

III.

**{¶50}**  In her third assignment of error, Thompson argues the trial court erred in appointing a guardian ad litem and this appointment of a GAL violates Wife's due process rights. Thompson cites *Thomasson v. Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, 106 N.E.3d 1239 in support of her argument.  In *Thomassson*, the Ohio Supreme Court held that Civil Rule 75(B)(2) does not apply to adults and there is no rule that permits a trial court to appoint a GAL for a competent adult.  *Id.*  However, the Ohio Supreme Court also stated that, pursuant to Civil Rule 17(B), a trial court may appoint a GAL to represent an adult when the court has adjudicated the adult to be incompetent and who does not

otherwise have an appropriate representative.  *Id.*  In *Thomasson*, the Ohio Supreme Court found an adult's right to due process is violated without an adjudication that the adult is incompetent and without an opportunity to be heard on the issue of his or her competency.  *Id.*

{¶51}  In this case, Wife was adjudicated incompetent in January of 2016, prior to the appointment of the GAL in this case.  Further, the parties had a notice and opportunity to be heard regarding the appointment of a GAL at the hearing on November 29, 2017.

{¶52}  As to Thompson's argument that Wife already had an appropriate representative since she is Wife's guardian of the person and estate as appointed by the probate court, the magistrate found as follows, "in light of all of the evidence presented at the hearing of 11/29/2017, the Magistrate is concerned that Brenda Thompson may have an adverse pecuniary interest.  The Magistrate is therefore, reversing its prior ruling regarding the Guardian Ad Litem, and appointing Attorney Kristin Zemis as the Guardian Ad Litem."

{¶53}  Thompson did not provide a transcript of the November 29, 2017 hearing before the magistrate to the trial court or to this Court.  When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.  *Knapp v. Edwards Lab.*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980).  Because Thompson has failed to provide this Court with a transcript of the November 29, 2017 hearing, we must presume the regularity of the proceedings below and affirm.  It is the duty of an appellant to ensure the record, or whatever portions thereof are necessary for the determination of

the appeal, are filed with the court in which he seeks review. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 19, 520 N.E.2d 56 (1988).

**{¶54}** Thompson's third assignment of error is overruled.

IV.

**{¶55}** In her fourth assignment of error, Thompson contends the trial court erred in dismissing Tisdall and the Tisdall Trust as parties to this case.  The magistrate in this case dismissed Tisdall prior to the trial in this action, finding the trial court lacked personal jurisdiction over Tisdall.  The trial court found that whether Tisdall is a resident of Ohio is not determinative of whether Ohio has personal jurisdiction over her and that the magistrate erred in dismissing Tisdall prior to holding an evidentiary hearing to determine whether the court has personal jurisdiction over her.  However, the trial court also found the dismissal of Tisdall was harmless error, as it did not affect the outcome of this case and did not affect the three issues left for hearing after the agreement of the parties.

**{¶56}** Thompson argues she was prevented from seeking assets given by Husband to Tisdall and her trust.  Assuming arguendo that the magistrate did fail in dismissing Tisdall prior to holding an evidentiary hearing to determine whether the trial court had personal jurisdiction over her, we concur with the trial court that the error is harmless.

**{¶57}** Civil Rule 61 governs harmless error and states the following:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment

or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

**{¶58}** Upon review, we find the dismissal of Tisdall did not affect Thompson's substantial rights, as it did not affect the outcome of the case. See *Solon v. Solon*, 5th Dist. Stark No. 2017CA00201, 2018-Ohio-3147. Tisdall had no effect on any of the three remaining issues, the division of bank accounts, attorney fees, or spousal support.

**{¶59}** Further, at the time of the trial in this matter, Thompson had a concealment action pending against Tisdall in Probate Court with allegations that Husband gave assets to Tisdall and/or her trust. After the magistrate granted Tisdall's motion to dismiss in this case, the parties came to an agreement on all but the division of the bank accounts, spousal support, and attorney fees. The parties' agreement in this case, made after Tisdall was dismissed, provides, "all other actions in Probate Court or which can be filed will be dismissed. The parties shall execute complete mutual waivers and releases, which shall be prepared by Attorney Hervey."

**{¶60}** Thompson's fourth assignment of error is overruled.

V.

**{¶61}** In her fifth assignment of error, Thompson contends the trial court erred and abused its discretion in limiting evidence as to financial misconduct.

**{¶62}** Decisions regarding the admissibility or exclusion of evidence are within the broad discretion of the trial court. *Beard v. Meridia Huron Hospital*, 106 Ohio St.3d 237, 834 N.E.2d 323 (2005). A decision to admit or exclude evidence will be upheld absent an

abuse of discretion. *Id.*  Abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶63}  Thompson argues the trial court abused its discretion in preventing her from presenting evidence of financial misconduct such as: Husband promoting his son at Myers Machining and giving him a pay raise; Husband selling motor vehicles to pay for his travels and life in Florida; Husband selling the marital residence out from under Wife; Husband spending $80,000 to improve the Ridge Road property while he was living in Florida; Husband spending marital assets on his fight against the guardianship proceedings; Husband paying for his living expenses out of marital assets from May 2015 to May of 2016, yet refusing to pay for Wife's care during that period; Husband taking a salary of $252,000 per year until June of 2017 but failing to account for where the funds went; Husband transferring funds to Tisdall; and Husband purchasing a boat and SUV with Tisdall.

{¶64}  Upon review, we find the trial court did not abuse its discretion in the evidence it admitted at the trial.  At the trial, the parties agreed that the trial would be limited to three issues:  the division of the bank accounts, spousal support, and attorney fees.  The evidence that Thompson alleges she was prevented from introducing did not relate to the three issues left for trial.  The trial court permitted Thompson to introduce evidence on the division of the bank accounts, the statutory factors for spousal support, and the payment of attorney fees.

{¶65} Thompson additionally contends that the magistrate and trial court impermissibly took judicial notice of matters from the hearing held on November 29, 2017

in limiting the presentation of her evidence at the trial.  However, a trial court can take judicial notice of undisputed facts and of their own records in the case under consideration.  *In re Helfrich*, 5th Dist. Licking No. 13CA20, 2014-Ohio-1933.  Further, Thompson objected to the magistrate's decision after the magistrate issued her decision based upon the November 29, 2017 hearing, but did not provide a transcript of that hearing to the trial court, or to this Court on appeal.  Thus, we must presume the validity of the lower court's proceedings.  *Knapp v. Edwards Lab.*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980).

{¶66}  Thompson's fifth assignment of error is overruled.

Cross-Assignment of Error I.

{¶67}  In his assignment of error, Husband argues the trial court abused its discretion in awarding additional attorney fees to Thompson.  Husband contends since Wife got an equal amount of the proceeds from the sale of the assets, she has the ability to pay her own attorney fees and there is no evidence the corporation paid the attorney fees of Husband.

{¶68}  Pursuant to R.C. 3105.73(A), a divorce court "may award all or part of reasonable attorney's fees * * * to either party if the court finds the award equitable."  In determining whether an award of attorney fees is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, conduct of the parties, and any other relevant factors the court deems appropriate.  *Id.*  An award of attorney fees in a divorce proceeding is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.  *Kirkpatrick v. Kirkpatrick*, 5th Dist. Tuscarawas No. 2014AP050018, 2015-Ohio-427.

{¶69} The trial court found that Husband paid his attorney fees and the attorney fees of others related to this divorce case before the division of marital assets and thus it would be equitable for the parties to split the cost of Wife's attorney fees related to the divorce.  Upon our review of the record, we do not find the trial court abused its discretion in ordering Husband to pay a portion of Wife's attorney fees.  Husband testified he has paid his own attorney fees and the attorney fees on behalf of Myers Machining, although he is unsure how much he has paid for each.  Additionally, Husband testified he paid Tisdall's legal fees.  The weight to be given to the evidence and credibility of the witnesses are issues for the trier of fact.  *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), certiorari denied, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183 (1990).

{¶70} Husband's cross-assignment of error is overruled.

{¶71} Based on the foregoing, the judgment entries of the Tuscarawas County Court of Common Pleas are affirmed.

By Gwin, P.J,

Hoffman, J., and

Delaney, J., concur